UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| Michael Myers, Robert G. Neale, Mark B. Mumley, Gregory Penn, Plaintiffs, | : : : : : |
| v. | : File No. 1:07-CV-120 |
| TransCor America, LLC, William Brees, similarly situated John Doe guards, Defendants. | : : : : : |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Paper 81)

Plaintiffs Michael Myers, Robert Neale, Mark Mumley and Gregory Penn, each proceeding *pro se*, bring this action claiming that their treatment during out-of-state transports violated their constitutional rights. Numerous other Vermont inmates have moved *pro se* to intervene in case. The plaintiffs have filed a motion for a temporary restraining order, and defendants TransCor America, LLC ("TransCor") and William Brees have moved to dismiss or, in the alternative, for a transfer of venue. For the reasons set forth below, I recommend that this case be TRANSFERRED to the United States District Court for the Middle District of Tennessee.

## Factual Background

For purposes of the defendants' motion to dismiss or transfer, the facts alleged in the complaint will be

accepted as true.  See Cavu Releasing, LLC v. Fries, 419 F. Supp. 2d 388, 394 (S.D.N.Y. 2005).

    A.  Michael Myers

    On June 5, 2005, plaintiff Michael Myers, a Vermont inmate, was placed in TransCor custody and transported by van from Springfield, Vermont to the Lee Adjustment Center in Beattyville, Kentucky.  While being transported, Myers wore handcuffs, ankle shackles and a belly chain.  The handcuffs were reinforced by a "black box,"[1] which was then used to secure the handcuffs to the belly chain.  A second chain was used to lock two inmates together.

    Myers told TransCor employees that the restraints on his wrist were too tight and were causing him severe pain. He was told to "deal with it," and that TransCor policy required all inmates to be transported in this fashion. Because of the position in which the black box and other restraints forced him to sit, Myers experienced extreme shooting pains in his back, wrists, legs and spine.   He

---

[1]  Although the complaint does not provide details about the "black box," the device has been described as a mechanism "applied over the chain and lock area of conventional handcuffs to form a rigid link between the two wristlets." Moody v. Proctor, 986 F.2d 239, 240 n.3 (8th Cir. 1993).  Another court described the "black box" as "a metal or plastic device fitting over the handcuffs to prevent them from being picked.  The box, according to the inmates who testified, holds the wrists and arms in a rigid, unnatural position."  Fulford v. King, 692 F.2d 11, 13 5th Cir. 1982).

2

advised TransCor employees of his pain, but his complaints were "brushed off."

The trip to Kentucky took 24 to 26 hours. At one point he was thrown into the back of the van "like a 'B-B in a boxcar,'" resulting in additional pain and discomfort to his wrists, as well as swelling in his wrists, hands and fingers. When Myers arrived in Kentucky, his restraints were removed but the pain, swelling, discoloration and other effects remained for nearly a week.

In September 2005, Myers was transported by TransCor from Kentucky to Tennessee in a school bus-type vehicle. The bus was in disrepair, leaked water and was cold. Myers was placed in full restraints as described above, and again experienced pain and swelling as a result. Halfway through the trip, he was placed in a smaller bus with a different driver. This driver drove in a manner that tossed him around and exacerbated his pain and swelling. After his arrival in Tennessee, the restraints were removed but the pain and swelling continued for "the better part of a week."

In June 2006, Myers was transported by TransCor back to Kentucky in the same bus that had brought him to Tennessee. At the time, he was suffering from a fractured hand and was

3

nine weeks post-fracture. Myers asked TransCor employees if, due to his hand injury, he could avoid the black box, but was "flatly told 'No.'" Myers was also denied his medication for his injury, which included Tylenol #3 and Xanax to treat anxiety.

While on the bus to Kentucky, Myers informed TransCor employees that his hands and wrists were swollen and that he was experiencing extreme pain. He was advised that nothing could be done and that he needed to "toughen up." One TransCor employee allegedly told him: "[T]here's no painless process on TransCor and you need to just deal with it." Myers' additional complaints about the restraints, as well as the general conditions on the bus, went unanswered.

Upon their arrival in Kentucky, one TransCor employee threatened Myers and other inmates with disciplinary segregation as a means of putting a stop to complaining in the future. No such segregation was imposed. Myers was placed in a "medical detox area" due to erratic vital signs, was sick to his stomach, and allegedly experienced sweats, paranoia, edginess, fear and agitation.

In October 2006, Myers was transported from Kentucky to Vermont in much that same manner as his previous transports.

4

He again suffered swelling, pain and eventually numbness. He informed TransCor employees of his condition. Specifically, he told a TransCor employee that he needed larger handcuffs and a break from the pain. A supervisor approached him, felt his wrists, and said "You are okay." Other inmates made similar complaints and were treated the same way.

In December 2006, TransCor transported Myers from Vermont to Oklahoma. While preparing for the trip, Myers informed TransCor employees of his previous experiences and requested a larger set of handcuffs. A TransCor employee stated that "we don't have time for this" and declined to grant Myers' request.

Myers alleges that his wrists began to swell "before the bus had even left the Vermont correctional facility parking lot." The trip went much as the others had, with Myers complaining of pain and TransCor employees refusing to provide him any relief. Additionally, the inmates were informed that "if they needed to defecate during the trip, their handcuffs would not be released, and that the inmate chaned [sic] to them would have to 'wipe you up.'"

During the 56 hour trip to Oklahoma, Myers suffered

5

other injuries which he attributes to his upright position.
These injuries included: red, raw, irritated and inflamed
armpits; red, irritated and burning buttocks; burning sores
on his buttocks and back following the trip; and burning,
tingling, itching and extreme swelling in his feet. He also
suffered shooting and stabbing pains in his back and down
his legs. As a result of his overall pain and trauma, Myers
experienced nausea.

Myers alleges that the pain he suffered exceeded
"anything the trial judge sentenced him to." He claims that
pain and suffering was administered by TransCor employees
"maliciously and sadistically under the guise of mandatory
and official company policies and practices," and that the
defendants' conduct would "shock the conscience of the
community were it aware of the barbaric and inhumane
conditions imposed" on him.

B. Robert G. Neale

In May 2006, plaintiff Robert Neale was transported by
TransCor to Tennessee. Like Myers, Neale was restrained
with a black box and claims to have suffered "pain and
swelling from the outset of the trip which lasted
continuously for approximately 45 excruciating hours on a

bus trip from Vermont to Tennessee."  On the first day, the bus was very hot and the inmates were not given a lunch.  For dinner, the inmates were given a sandwich, french fries and a soda, but remained fully restrained and were not given straws.

On the way to Tennessee the bus stopped at Lee Adjustment Center in Kentucky.  By this time, 24 hours into the ride, Neale's hands and feet had swollen to nearly twice their normal size.  Both wrists were chaffed and bleeding.  His feet and ankles were swollen up to his knees, and he had lost all feeling in his hands and feet.  In his words, "he was beyond pain."  He was also experiencing severe back pain.

Once the trip resumed, Neale complained to TransCor employees about his pain.  The employees refused to provide him any relief.  Neale describes their conduct as malicious and sadistic.  When Neale arrived in Tennessee, his restraints were removed, revealing discoloration in his extremities, bruising, scarring and cuts.  He was seen by a nurse at the facility who told him "you'll be fine."

Five days later, Neale was transferred from Tennessee to Oklahoma.  During the 26-hour trip he experienced the

7

same sorts of pain and was again denied any relief.  When he arrived in Oklahoma, he was told at the prison medical unit that he would "be fine in a couple of days."

Approximately 30 hours after arriving in Oklahoma, Neale suffered a myocardial infarction.  He claims that this was the result of the "severe physical and emotional stresses placed upon his body during the transport."  Neale had no prior history of heart problems, and examinations performed at the time ruled out any cardiac disease.

C.  Mark Mumley

In December 2006, plaintiff Mark Mumley was transported from Vermont to Kentucky.  After he was placed in restraints, including the black box, Mumley immediately began to suffer pain.  This pain was amplified by Mumley's pre-existing degenerative disc disease and impinged nerves.

Mumley was dressed in flip-flops and a cotton jump suit, and complained that the bus was cold.  A TransCor employee allegedly responded: "You're not in Vermont anymore.  CCA [the parent company of TransCor] has ways of dealing with you yankees."  The bathroom on the bus was locked, and inmates were only allowed to use it when the bus was stopped.  They were also informed that their hands would

8

not be released from the black box, and that if they had to sit down the inmate chained to them would have to wipe. When the inmates complained about these conditions, they were threatened with being "hog tied."

During transport, Mumley suffered swelling and pain similar to that experienced by Myers and Neale. When he made TransCor employees aware of these issues, he was not provided any form of relief. Mumley also claims that TransCor employees denied him medication that had been prescribed to him for back pain. Mumley describes this conduct as "malicious" and "sadistic."

Two weeks later, Mumley was transported from Kentucky to Oklahoma. Although the bus had heat, Mumley again suffered from the use of the full restraints and was denied medication for pain. When he arrived in Oklahoma he was seen by medical personnel who, again, told him "it will go away."

D. Gregory Penn

In September 2003, plaintiff Gregory Penn was transported by TransCor from Vermont to a correctional facility in Haynesville, Virginia. The trip lasted 18 hours, during which Penn was allowed one meal and one

bathroom stop. Penn was fully secured, including use of the black box. Several hours into the trip, he began experiencing swelling in his hands and feet as well as pain, tingling and numbness. When he complained, he was "brushed off." "TransCor employees refused to consider relieving the tightness of any of the restraints despite numerous requests from the plaintiff and obvious swelling and discoloration of the plaintiff's extremities."

In January 2004, Penn was transported from Virginia to Kentucky. The trip lasted 58 hours, and included stops at other prisons along the way. He again suffered pain and swelling in his extremities, as well as pain in his lower back. When Penn complained, TransCor employees cited company policy and offered no relief.

In March 2004, TransCor transported Penn from Kentucky to Arizona. In May 2005, he was moved to Tennessee, and in May 2006 he was transported to Oklahoma. Each of these trips followed the same pattern, with Penn experiencing pain and numbness and TransCor employees offering no relief.

The "causes of action" raised by the plaintiffs focus on the use of the black box restraints. They claim that the use of these restraints for extended periods of time

10

constitutes both excessive force and the "malicious and sadistic infliction of pain and suffering" in violation of the Eighth Amendment. They also accuse TransCor of failure to properly train and supervise employees, and of a pattern of "practice, policies and customs" that has resulted in Eighth Amendment violations. Individual TransCor defendants, currently identified as John Does, are also alleged to have violated the Eighth Amendment by means of their conduct.

For relief, the plaintiffs seek a declaratory judgment, a permanent injunction, and compensatory damages. Motions to intervene in the case are currently pending on behalf of over 70 Vermont inmates incarcerated nationwide.

## Discussion

Defendants TransCor and Brees argue that venue in Vermont is improper, and have therefore moved, as an alternative to dismissal under Rule 12(b)(6), for dismissal or transfer pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a). Prior to determining proper venue, a court may not reach the merits of the case. See Joyner v. Reno, 466 F. Supp. 2d 31, 40 (D.D.C. 2006). Therefore, the Court will first assess the defendants' venue argument.

11

When a case is commenced in an improper venue, Section 1406(a) requires the court to either dismiss it or, "if it be in the interest of justice," transfer the case to a district in which it could have been brought. 28 U.S.C. § 1406(a). "Whether dismissal or transfer is appropriate lies within the sound discretion of the district court." Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993). "On a Rule 12(b)(3) motion to dismiss based on improper venue, the burden of showing that venue in the forum is proper falls on the plaintiff." Indymac Mortgage Holdings, Inc. v. Reyad, 167 F. Supp. 2d 222, 237 (D. Conn. 2001).[2]

In cases such as this involving questions of federal law, venue lies in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b); see also Amaker v. Haponik, 198 F.R.D. 386, 391 (S.D.N.Y. 2000). The plaintiffs also claim

---

[2] While the defendants have brought their motion under 28 U.S.C. § 1406, the plaintiffs have responded with arguments that would apply under 28 U.S.C. § 1404. Given the plaintiffs' *pro se* status, the Court will nonetheless assess the merit of the defendants § 1406 argument.

12

diversity jurisdiction.  In that event, the controlling statute is 28 U.S.C. § 1391(a), which provides that venue lies in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

Under subsection one of each provision, the proper venue is Tennessee.  The complaint alleges that TransCor is a private corporation headquartered in Nashville, Tennessee.  Defendant Brees is alleged to be the National Regional Director of TransCor.  The defendants inform the Court that Brees works at TransCor's Nashville headquarters and resides in the Middle District of Tennessee.  The defendants further attest that no TransCor employees live in Vermont, and that "a preliminary investigation of a few of the pertinent transports reveals that relevant, current TransCor employees reside in Tennessee."  (Paper 81-2 at 12).  Given these allegations and representations, it appears likely that all

13

defendants reside in Tennessee, and that pursuant to §
1391(a)(1) and (b)(1), venue is proper in that state.

The next subsection of each statute determines venue based upon where "a substantial part of the events or omissions giving rise to the events occurred . . . ." 28 U.S.C. § 1391(a)(2), (b)(2). The Second Circuit has instructed lower courts to "take seriously the adjective 'substantial'" in construing "the venue statute strictly." Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 356 (2d Cir. 2005). In this case, TransCor is alleged to be liable for: failing to properly train and supervise employees; establishing unconstitutional policies and practices; and for exhibiting deliberate indifference to the plaintiffs' needs. (Paper 11-2 at 17-18).[3] Accepting the facts alleged in the complaint as true, any training, supervision, and development of policies would have taken place in Tennessee. Furthermore, although the complaint does not allege that TransCor had knowledge of the plaintiffs' suffering, any such knowledge and resulting indifference would also have occurred, at the corporate level, in Tennessee.

With respect to the John Doe defendants, the complaint

---

[3] There are no specific "causes of action" brought against defendant Brees.

14

depicts pain and suffering during various transports, some of which commenced or ended in Vermont.  The Second Circuit has held that "substantiality" is "more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts."  Daniel v. United States, 428 F.3d 408, 432-33 (2d Cir. 2005).  On a quantitative level, the vast majority of the plaintiffs' travel in TransCor vehicles took place outside of Vermont.  With respect to the more significant qualitative analysis, the claims focus on a Tennessee company, its employees, and their allegedly malicious and sadistic conduct.  While the plaintiffs are each from Vermont, the crux of their complaint involves out-of-state actors and, for the most part, out-of-state events.  Consequently, the Court should find that Vermont was not the site of "substantial" events in this case, and that venue here is improper.

Because this action could have been brought in Tennessee, subsection (3) of § 1391(a) and (b) is inapplicable. See Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 2d § 3802.1 n. 26 (Supp. 2003)

15

(citing F.S. Photo, Inc. v. Picturevision, Inc., 48 F. Supp. 2d 442, 448 (D. Del. 1999)).

Having determined that venue is most appropriate in Tennessee, the Court must decide whether the case should be dismissed, or whether the interests of justice call for a transfer. "Courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice." Daniel v. American Bd. of Emergency Medicine, 428 F.3d 408, 435 (2d Cir. 2005) (citation omitted). In making this determination, consideration should be given to the ultimate goal of the "expeditious and orderly adjudication of cases and controversies on their merits." Goldlawr, Inc. v. Heinman, 369 U.S. 463, 466-67 (1962).

"A 'compelling reason' for a transfer is generally acknowledged when a plaintiff's case, if dismissed, would be time-barred on re-filing in the proper forum." Daniel, 428 F.3d at 435 (quoting Phillips v. Seiter, 173 F.3d 609, 610 (7th Cir. 1999)). Here, the plaintiffs filed their complaint several months ago, and most of events alleged therein occurred over one year ago. Tennessee generally applies a one year limitations period to § 1983 claims. See Berndt v. State of Tennessee, 796 F.2d 879, 883 (6th Cir.

16

1986).  Accordingly, if the Court were to dismiss this case, the plaintiffs' claims might be time-barred if they tried to re-file in Tennessee.

Furthermore, given that most if not all defendants reside in Tennessee, the execution of discovery and court proceedings will be more "expeditious and orderly" if undertaken and overseen by a Tennessee court.  <u>Goldlawr</u>, 369 U.S. at 466-67.  Indeed, if a class is certified in this case and counsel appointed for the class, it will be significantly easier and less costly for appointed counsel to proceed with the case if he or she practices in Tennessee.  Accordingly, because a transfer will likely serve the interests of justice for both the plaintiffs and the defendants, I recommend that this case be TRANSFERRED to the Middle District of Tennessee.  I further recommend that the remainder of the case, including questions of dismissal, class action certification, and joinder, be transferred for further analysis and, if necessary, factual development.  <u>See</u> <u>Lyon v. Cornell University</u>, 1998 WL 226193, at *2 (S.D.N.Y. May 4, 1998) (collecting cases wherein pending motions were sent to transferee court "to decide important issues that are critical [to] the disposition of the

17

case").[4]

## Conclusion

For the reasons set forth above, I recommend that the motion for change of venue (Paper 81) be GRANTED and that this case be TRANSFERRED to the United States District Court for the Middle District of Tennessee pursuant to 28 U.S.C. § 1406.

Dated at Burlington, in the District of Vermont, this 23rd day of January, 2008.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).

---

[4] Because a motion to transfer venue is non-dispositive, I have authority under 28 U.S.C. § 636 to issue an order on the motion. However, because the transfer motion is raised in conjunction with a motion to dismiss, I have chosen to format my opinion as a report and recommendation. See Glover v. Goord, 2007 WL 2454193, at *5 n.4 (N.D.N.Y. Aug. 22, 2007).

18