IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL MYERS, ROBERT G. NEALE, ) <br> MARK B. MUMLEY, and GREGORY PENN, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> TRANSCOR AMERICA, LLC, ) <br> BILL BREES, and JOHN DOE GUARDS, ) <br> ) <br> Defendants. ) | Case No. 3:08-295 <br> Judge Trauger |

## MEMORANDUM

On September 9, 2010, the Magistrate Judge issued a Report and Recommendation (Docket No. 429) on the Motion for Summary Judgment filed by defendant TransCor America, LLC (Docket No. 331), recommending that the motion be granted in part and denied in part. Pending before the court are Objections to the Report and Recommendation filed by the defendant (Docket No. 439) and by plaintiff Mark Mumley (Docket No. 436). For the reasons discussed below, both parties' objections will be overruled, and the court will accept the Report and Recommendation in its entirety.

## FACTS

The plaintiffs are four prisoners held by the Vermont Department of Corrections. They allege that defendant TransCor America, LLC ("TransCor"), a private prison transportation company, violated their constitutional rights by mistreating them during various trips to and from

1

prison facilities.[1]

Specifically, the plaintiffs allege that they were kept in immobilizing restraints – handcuffs, leg irons, a belly chain, and a "black box," which is a solid mechanism placed over the keyhole of handcuffs – for periods of up to 56 hours. This allegedly caused the plaintiffs to suffer severe pain, swelling, numbness, bleeding, and discoloration of the extremities. The plaintiffs further allege that they received infrequent meals and restroom breaks. They assert claims under 42 U.S.C. § 1983, as well as under other federal and state laws.

TransCor and other defendants filed motions to dismiss, after which the following causes of action survived:

> 1. The claim that the defendants' use of "black-box restraints for extended periods of time" violates the Eighth Amendment and is an abuse of power;
>
> 2. The plaintiffs' claim that TransCor failed to adequately train and supervise its employees; and
>
> 3. The plaintiffs' claims that TransCor's practice, policy, or custom of requiring full and total restraints, despite clear indications that such restraints were causing pain, suffering, and other physical problems to the prisoners being transported, is unconstitutional.

(Docket No. 429 at 4 (citations omitted).)

TransCor then filed a Motion for Summary Judgment on the remaining claims. (Docket

---

[1] Unless otherwise noted, the facts are drawn from the Magistrate Judge's Report and Recommendation and from the parties' filings. On a motion for summary judgment, the court draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Brown v. United States*, 583 F.3d 916, 919 (6th Cir. 2009).

No. 331). In response, plaintiff Michael Myers filed a Motion to Dismiss his own claims (Docket No. 406), which the Magistrate Judge granted (Docket No. 429 at 5-7). The Magistrate Judge also dismissed the claims of plaintiffs Gregory Penn and Mark Mumley, because they failed to file responses to TransCor's motion. (*Id.* at 9-12.)

The Magistrate Judge addressed the merits of plaintiff Robert Neale's claims, breaking his § 1983 claim into two components: (1) allegations regarding physical conditions in the transportation vans, which the Magistrate Judge analyzed as a "conditions of confinement" claim (*id.* at 16-18), and (2) allegations regarding excessive restraints, which the Magistrate Judge analyzed as an excessive force claim (*id.* at 18-30). The Magistrate Judge concluded that, although the former claim was not viable, there was enough evidence for a reasonable jury to find that TransCor's use of restraints on Neale constituted excessive force, in violation of the Eighth Amendment.[2] (*Id.* at 18, 28.)

TransCor cannot be held vicariously liable under § 1983 for its employees' actions, however, so the Magistrate Judge addressed three arguments in support of TransCor's liability. (*Id.* at 30.) First, the Magistrate Judge rejected Neale's argument that TransCor could be held liable under a theory of "supervisory liability," because that theory applied only to individuals, not entities. (*Id.* at 31-32.) Second, the Magistrate Judge rejected the claim that TransCor failed to adequately train its employees, because there was no evidence to support that theory. (*Id.* at 32.)

---

[2] The Magistrate Judge also dismissed Neale's state law claims and refused to dismiss Neale's claims pursuant to the Prison Litigation Reform Act. (*Id.* at 36-38.) These conclusions are not relevant to the parties' current objections.

3

Finally, the Magistrate Judge found that TransCor could face municipal liability if it had a policy or custom that led to the alleged constitutional violations. In support of his claims, Neale provided affidavits from himself and four other prisoners, stating that the restraints used during transport frequently caused excessive pain. The Magistrate Judge found that this was enough to allow the § 1983 excessive force claim to go forward, because a jury could reasonably find that TransCor had a custom of placing prisoners in unnecessarily painful restraints. (*Id.* at 34-35.)

## ANALYSIS

Defendant TransCor and plaintiff Mumley have both filed Objections, pursuant to Federal Rule of Civil Procedure 72(b), to the Report and Recommendation. TransCor argues that the evidence submitted by plaintiff Neale is not sufficient to support municipal liability against TransCor. (Docket No. 440 at 4-11.) Mumley argues that the Magistrate Judge erred in recommending dismissal of his claims. (Docket No. 436 at 2-6.)

**I. Standard of Review**

When a magistrate judge files a report and recommendation regarding a dispositive pretrial matter, the district court must review *de novo* any portion of the Report and Recommendation to which a party specifically objects. Fed. R. Civ. P. 72(b)(3). Here, the Report and Recommendation concerned a motion for summary judgment, so this court will review the contested findings *de novo*. *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001).

Federal Rule of Civil Procedure 56(c) requires the court to grant a motion for summary

4

judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the [plaintiff]." *Moldowan*, 578 F.3d at 374.

"'[T]he judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient," and the plaintiff's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the plaintiff. *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## II.     TransCor's Municipal Liability

TransCor does not dispute the legal framework applied by the Magistrate Judge in analyzing plaintiff Neale's § 1983 claim. The Magistrate Judge found that TransCor, which is akin to a municipality when transporting prisoners, can only be liable for the alleged constitutional violations of its employees if TransCor's "policy or custom" was the "moving

5

force" behind the violations. (Docket No. 429 at 31 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *City of Canton v. Harris*, 489 U.S. 378, 379 (1989)).) Thus, "[p]lainiff Neale must prove his constitutional injury was caused by an action taken pursuant to an official policy or a custom of TransCor." (*Id.*)

Even though TransCor does not have a written policy that its employees should use excessively painful restraints, Neale can show that the defendant had "a custom which, though not an official policy, is so widespread that it amounts to a *de facto* policy." (*Id.* at 33 (citing *Ford v. County of Grand Traverse*, 535 F.3d 483, 495-96 (6th Cir. 2008).) The Sixth Circuit has articulated the elements of a municipal liability claim based on a defendant's custom:

> (1) the existence of a clear and persistent pattern of [unconstitutional conduct by the defendant's] employees;
>
> (2) notice or constructive notice on the part of the [defendant];
>
> (3) the [defendant's] tacit approval of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction; and
>
> (4) that the [defendant's] custom was the "moving force" or direct causal link in the constitutional deprivation.

*Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996); *see also Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

Neale argued that "TransCor had a custom of placing and leaving inmates in restraints in such a manner that the restraints caused inmates to suffer unnecessary pain and physical injury which were obvious and apparent and for which no relief was offered by the transport officers." (Docket No. 429 at 34.) In support, he submitted affidavits from himself and four other Vermont

6

inmates. (*See* Docket Nos. 388-92.) Generally, the affidavits describe the pain suffered by the prisoners during trips managed by TransCor.

Neale's affidavit states that he was transported by the defendant on four occasions between 2006 and 2009. (Docket No. 388 ¶ 2.) He described the experience of one trip:

> 24 hours or so into the trip, my hands and feet had swollen to nearly twice their size. Both wrists were [chafed] and bleeding. My feet and ankles were swollen up to my knees, and I had lost all feelings in my hands and feet. I was beyond pain. I was also experiencing severe back pain due to the positional restrictions imposed upon me for the extended period of time.

(Docket No. 388 ¶ 17.) On each of Neale's other trips, he was similarly immobilized for extended periods of time, and he suffered similar pain and swelling. (*Id.* ¶¶ 25, 33.) On all occasions, Neale complained to the transport officers, but they ignored his complaints and threatened punishment if he continued to complain. (*Id.* ¶¶ 14, 19, 43.)

The other affiants' experiences were substantially identical. Prisoner Jason Mears was transported on six occasions between 1998 and 2009. (Docket No. 389 ¶ 2.) On each trip, Mears "observed personal injury to inmates," including swelling and cuts caused by the restraints. (*Id.* ¶ 6.) Prisoner Christopher Seifert was transported six times between 2007 and 2009 (Docket No. 390 ¶ 2), and, on each trip, his "wrists and ankles [were] severely swollen to nearly twice their size. As a result, [he] lost the feelings and sensation in [his] hands and feet and [his] hands turned purple from the lack of circulation." (*Id.* ¶ 4.) Prisoner Brian Rooney was transported once in 2009 (Docket No. 391 ¶ 2); his hands and feet became swollen and numb, and he "spent nearly 36 hours incapacitated and unable to move" (*id.* ¶ 4). Finally, prisoner Carey Eastman was transported six times between 2007 and 2009 (Docket No. 392 ¶ 2),

7

and he suffered pain, swelling, numbness, and bleeding (*id.* ¶¶ 3-4). Each of the affidavits states that TransCor employees ignored the prisoners' complaints, and most of the affidavits state that personnel at the destination facility refused to document the prisoners' injuries.

Together, these affidavits provide evidence from five prisoners regarding 23 trips over the course of 12 years. The Magistrate Judge held that, at the summary judgment stage, this was sufficient to show a clear and persistent pattern of constitutional violations:

> The evidence presented by Plaintiff Neale in support of his argument is certainly not overwhelming. However, Plaintiff Neale is not required to win his case in opposing summary judgment. He is merely required to set forth sufficient evidence raising a genuine issue of material fact on the issue. The Court finds that he has satisfied this burden. His claim of liability on the part of TransCor is not based upon merely unsupported or conclusory allegations. Nor is it based upon only the acts alleged to have violated his own constitutional rights or scattered and disjointed allegations of other misconduct on the part of TransCor.
>
> Plaintiff Neale has filed affidavits from four other prison inmates who attest that they were transported on several different occasions in essentially the same manner as Plaintiff Neale over the course of several years of transport trips. These affiants further contend that they encountered the same reluctance of any transport or prison officials to document their injuries or complaints. Although Defendant TransCor discounts these affidavits, the Court finds that they are sufficient to support Plaintiff Neale's argument. This is especially so given the specific and narrow nature of the factual allegations at issue in this case and the similarity between the acts alleged by Plaintiff Neale and the acts attested to by the affiants. In this respect, Plaintiff Neale's proof differs significantly from that of a plaintiff who merely alleges other wrongdoing by a defendant as an example of a pattern of misconduct. Plaintiff Neale has not attempted to prove a custom of excessive force by merely presenting evidence of other prisoner complaints made against TransCor. The Court finds that Plaintiff Neale has raised sufficient factual issues concerning the actions of TransCor to warrant submitting to the jury the question of whether TransCor

8

>had a custom of transporting inmates in the manner alleged by Plaintiff Neale and whether any such custom was the moving force behind his allegations of a constitutional violation.

(Docket No. 429 at 35-36 (citation and footnote omitted).)

TransCor objects to the Magistrate Judge's conclusion. It argues that the affidavits "represent a mere fraction of the number of prisoners TransCor transported," because the five affiants represent only .007% of the more than 326,954 prisoners that TransCor transported between 1998 and 2009. (Docket No. 440 at 5-6.) TransCor cites over a dozen federal cases finding that sporadic, isolated incidents of misconduct are not sufficient to show a "clear and persistent pattern" of constitutional violations. (Docket No. 440 at 6-8.) It essentially argues that, even if Eighth Amendment violations sometimes occurred during transport, such violations were too rare to constitute a clear and persistent pattern.

The defendant is correct that "[i]solated incidents 'are not the persistent, often repeated constant violations that constitute custom and policy' as required for § 1983 liability." *Braswell v. Corr. Corp. of Am.*, No. 3:08-0691, 2009 U.S. Dist. LEXIS 69863, at *35 (M.D. Tenn. Aug. 10, 2009) (quoting *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995)). But the evidence offered by plaintiff Neale shows misconduct that is uniform, predictable, and recurring, not sporadic and isolated. It is true that the 23 trips discussed in the affidavits represent a small fraction of the total number of trips managed by TransCor during the relevant time period. But, as the Magistrate Judge noted, the experiences recounted in the affidavits are practically identical. The consistency of the affiants' experiences suggests an ongoing, widespread pattern of conduct. As the defendant recognizes, in determining the existence of a pattern, "[t]he focus

9

is not merely on the number of allegations but 'on the common thread moving through them.'" (Docket No. 440 at 4 (quoting *Rizzo v. Goode*, 423 U.S. 362, 375 (1976)).)

Critically, each of the five affiants was transported on up to six separate occasions, and each affiant alleges that constitutional violations occurred on every single trip. If the jury credits these statements, it can reasonably infer that mistreatment occurred frequently on TransCor trips. If a supposedly rare event occurs with such regularity for multiple prisoners, it is reasonable to conclude that the events are not, in fact, rare. The fact that each of the five prisoners suffered (or observed) severe pain and swelling on every trip suggests that it is typical for transported prisoners to experience such pain and swelling.

The cases cited by the defendant are not to the contrary. They involve, for example, plaintiffs who submitted evidence of unrelated incidents of excessive force by police officers during arrests, in an effort to establish that the police department had a pattern of using excessive force. *See, e.g.*, *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) (holding that 27 unrelated, varying complaints of excessive force against a police department over four years did not create a pattern); *Arendale v. City of Memphis*, 519 F.3d 587, 600 (6th Cir. 2008) (holding that three instances of misconduct by a police lieutenant did not create a pattern); *Church v. City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994) (holding that four witnesses describing "only a few isolated instances" of police harassment, with no specificity, did not create a pattern). But the ability of the plaintiffs in those cases to point to isolated incidents of misconduct is unremarkable – even if the police very rarely use excessive force, a plaintiff will still be able to find multiple incidents. Here, in contrast, the uniform and regular violations

10

described in the prisoners' affidavits suggest a recurring pattern of misconduct.[3]

Of course, it is possible that, at trial, the jury will discount the prisoners' testimony or will give greater weight to TransCor's evidence. But, at summary judgment, the court must view the evidence in the light most favorable to Neale. In doing so, the court concludes that Neale's evidence is sufficient to show a pattern of constitutional violations.

TransCor further objects that municipal liability does not exist because the affidavits do not establish that TransCor had notice of the alleged constitutional violations. (Docket No. 440 at 10-11.) But a plaintiff does not need to show actual notice; instead, he can show that the defendant had "constructive notice." *Doe*, 103 F.3d at 508. In other words, the plaintiff can show that the defendant "should have known about" the violations, and that it "remained deliberately indifferent about [them]." *Thomas*, 398 F.3d at 433.

"Constructive notice will exist where the violation of federal law is so persistent and systemic as to be plainly obvious to the relevant policymakers." *Hill v. Bradley County Bd. of Educ.*, No. 1:05-cv-279, 2007 U.S. Dist. LEXIS 85394, at *41-42 (E.D. Tenn. Nov. 19, 2007); *cf. West v. Tillman*, 496 F.3d 1321, 1329 (11th Cir. 2007) ("The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant

---

[3] The defendant's attempt to contrast this case with *Thomas v. Baca*, 514 F. Supp. 2d 1201 (C.D. Cal. 2007), is unavailing. (*See* Docket No. 440 at 8-9.) In *Thomas*, which involved claims by prisoners who were forced to sleep on the jail floor, the plaintiffs presented evidence of over 24,000 instances of floor sleeping and submitted 885 supporting declarations. 514 F. Supp. 2d at 1212. This is obviously more evidence than Neale has submitted. But the court in *Thomas* awarded summary judgment to the plaintiffs, finding that "no reasonable jury could find a custom of floor sleeping did not exist." *Id.* at 1215. Here, Neale faces a lower burden; he needs to show that a reasonable jury could possibly find in his favor, not that no reasonable jury could find against him.

11

and of continued duration, rather than isolated occurrences." (quotation marks omitted)); *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 655 (5th Cir. 1997) ("[A] plaintiff can demonstrate constructive notice by showing the pervasiveness of the harassment, which gives rise to the inference of knowledge or constructive knowledge." (quotation marks omitted)). In *Leach v. Shelby County Sheriff*, 891 F.2d 1241 (6th Cir. 1989), for example, the plaintiff was a paraplegic prisoner who complained of inadequate medical treatment. The Sixth Circuit found that evidence of similar treatment given to 14 other paraplegics was sufficient to show that the defendant sheriff had constructive notice of the medical staff's actions – there had "been enough similar incidents to put the Sheriff, in his official capacity, on notice that [the plaintiff] would be subject to constitutional deprivation." *Id.* at 1247.

Here, for the reasons already discussed, if the jury credits the statements of the five inmates, it could reasonably to find that the alleged constitutional violations occurred frequently enough to give TransCor constructive notice. Certainly, if practically every transport trip ended with prisoners suffering from swollen, discolored hands and feet and bleeding wrists, TransCor "should have known" about it.

Accordingly, the court will overrule TransCor's objections to the Report and Recommendation.

## III. Dismissal of Mumley's Claims

Plaintiff Mumley objects to the Magistrate Judge's recommendation to dismiss his claims. Mumley has submitted no evidence in opposition to the defendant's Motion for Summary Judgment.

12

TransCor filed its Motion for Summary Judgment on November 30, 2009, and the Magistrate Judge ordered the plaintiffs to file their responses by February 1, 2010. (Docket No. 351.) Mumley failed to file a response. Instead, on January 28, 2010, he filed a letter with the court claiming that he had been "separated . . . from all his legal documents" and that he had no access to a law library.[4] (Docket No. 372.) The letter requested a six-month stay of proceedings. (*Id.*) Later, on March 25, 2010, Mumley filed a Motion for Sanctions against, among others, the Attorney General of Vermont, for denying him access to legal materials. (Docket No. 420.) The Magistrate Judge denied the motion, because the entities that Mumley sought to sanction were not parties to this action. (Docket No. 430.)

In the Report and Recommendation, the Magistrate Judge recommended dismissing Mumley's claims because he did not offer any evidence in support of his claims:

> Plaintiff Mumley has shown through his letter and his motion for sanctions that he retains the ability to contact the Court and to make filings regarding his claims. In this regard, he could have filed his own affidavit in support of his claims, as well as a response to Defendant Transcor's Statement of Undisputed Material Facts, despite not having access to his legal materials or a law library. Both of these filings could have been based upon Plaintiff's Mumley's own personal knowledge of the facts and events in which he was involved and would not have required legal research. At a minimum, these filings would have satisfied his basic obligation to respond and at least presented the Court with a basis to measure his claims against the proof submitted by Defendant TransCor in support of its request for summary judgment.
>
> Had Plaintiff Mumley taken those steps, the Court would have been able, in accordance with Rule 56(f), to address any specific

---

[4] Although filed on January 28, 2010, the letter was dated January 22, 2010.

13

> assertions that he was unable to provide evidentiary support for his
> claims in response to the motion for summary judgment.
> However, given Plaintiff Mumley's failure to present any evidence
> in support of his claims, . . . summary judgment should be granted
> to Defendant TransCor on the claims of Plaintiff Mumley.

(Docket No. 429 at 11-12 (citations omitted).)

Mumley has now filed Objections to the Report and Recommendation (Docket No. 436), as well as a belated Opposition to Defendant's Motion for Summary Judgment (Docket No. 437). Taking these documents together, Mumley raises the following arguments regarding his failure to submit any evidence: (1) that a stay should have been granted because he was separated from his legal materials (Docket No. 436 at 2, 6); (2) that plaintiff Neale failed to file an affidavit that Mumley had given to him (*id.* at 5); and (3) that the verified Complaint is sufficient to withstand summary judgment (Docket No. 437 at 1).

None of these arguments is meritorious. First, Mumley's initial letter to the court, which was dated January 22, 2010, fails to explain *when* he was separated from his legal materials. By that point, the defendant's Motion for Summary Judgment had been pending for nearly two months. It is further unclear exactly what documents Mumley was unable to access or why the lack of access prevented him from crafting any response at all. As pointed out by the Magistrate Judge, nothing prevented Mumley from at least filing his own affidavit or declaration in support of his claims.

Second, it is irrelevant that plaintiff Neale failed to file an affidavit that Mumley supposedly gave him. Mumley was undoubtedly aware that he was required to file his own response; the scheduling order directed the plaintiffs to file their "respective responses" (Docket

14

No. 351), and Mumley had, for example, previously filed his own individual Motion to Compel (Docket No. 326). In any event, Mumley filed his Motion for Sanctions more than one month after Neale had filed his response. By that point, Mumley knew that Neale had not submitted the affidavit, yet Mumley still failed to file an affidavit with the court.

Finally, the allegations in Mumley's Complaint are not sufficient to save his claims from summary judgment. It is true that, if a litigant signs a complaint "under penalty of perjury pursuant to 28 U.S.C. § 1746,"[5] the verified complaint "therefore carries the same weight as would an affidavit for the purposes of summary judgment." *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008). But the plaintiffs' signed Complaint only states that the plaintiffs "verif[y] that the allegations and facts set forth in the above Complaint are true and accurate to the best of [their] knowledge, information and belief." (Docket No. 11, Ex. 1 at 22.) The verification does not state that the plaintiffs are affirming the allegations under penalty of perjury.

Generally speaking, "there are two statements that are essential to a proper verification under § 1746: (i) an assertion that the facts are true and correct; and (ii) an averment that the first assertion is made under penalty of perjury." *United States v. 8 Gilcrease Lane*, 587 F. Supp. 2d 133, 139 (D.D.C. 2008) (citing *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988)); *see also Gotlin v. Lederman*, 616 F. Supp. 2d 376, 389 n.7 (E.D.N.Y. 2009) ("[I]t is plain that Conte's unsworn statement, which begins 'Salvatore Conte swears and declares the

---

[5] Section 1746 provides that an unsworn declaration can carry the force of a sworn statement if it is "in substantially the following form: . . . 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature).'" 28 U.S.C. § 1746(2).

15

following . . .', falls short of the form prescribed in § 1746. There is no statement that Conte is subject to perjury for any falsities . . . .").

The relevant Sixth Circuit cases plainly imply that, in order for a verified complaint to defeat summary judgment, it is necessary that the plaintiff sign the complaint under penalty of perjury. *El Bey*, 530 F.3d at 414; *Rodgers v. Hawley,* 14 Fed. Appx. 403, 409 n.2 (6th Cir. 2001) ("*Executed under the penalty of perjury*, a verified complaint has the same force and effect as an affidavit for evidentiary purposes." (quotation marks omitted and emphasis added)); *Brown v. Waters*, No. 91-2104, 1992 U.S. App. LEXIS 7138, at *4-5 (6th Cir. Apr. 7, 1992) ("Although unsworn, the verified complaint is sufficient to defeat defendants' motion for summary judgment on this issue *because [the plaintiff] signed the document under penalty of perjury*." (emphasis added)); *Williams v. Browman*, 981 F.2d 901, 904 (6th Cir. 1992) ("[The plaintiff] did verify the allegations in his complaint *by making them under 'penalty of perjury*.'" (emphasis added)); *see also, e.g.*, *Banks v. Appleton Papers, Inc.*, No. 3:02cv571, 2005 U.S. Dist. LEXIS 45368, at *3-4 n.3 (S.D. Ohio Mar. 28, 2005) ("Although the [complaint] is captioned as a 'Verified Complaint,' it is not such a pleading, since Plaintiff [did not] sign[] it under penalty of perjury . . . . Therefore, the Court does not consider the statements therein as evidence . . . ."). *But see Totman v. Louisville Jefferson County Metro Government*, No. 09-5764, 2010 U.S. App. LEXIS 17167, at *25-26 (6th Cir. Aug. 13, 2010) (holding that allegations from a verified complaint were inadmissible because they were speculation, rather than personal knowledge, and not addressing the sufficiency of the verification statement, which did not state that the complaint was signed under penalty of perjury).

16

Because Mumley did not submit any evidence in support of his individual claims, those claims must be dismissed. *See Moldowan*, 578 F.3d at 374 (noting that, at the summary judgment stage, the plaintiff has a burden to provide evidence beyond the pleadings). Mumley makes several additional objections to the Report and Recommendation – for example, that the state law claims were erroneously dismissed – but these objections are irrelevant, because Mumley cannot sustain any of his individual claims.

## CONCLUSION

For all of the reasons discussed above, the court will overrule both parties' objections and will adopt the Magistrate Judge's Report and Recommendation in its entirety.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge